Good morning, Your Honors. My name is James Todd Bennett. I'm representing the Petitioner-Appellant, who now is perhaps Petitioner and Petitioner-Appellant in this proceeding, depending on the application of the REAL ID Act in this case. I would suppose that the, we would review straight up the withholding of removal. I think you have a cat claim, but I'm not positive of that. Anyway, the withholding of removal claim. But that the parental association rights issue is still a habeas issue. Is that, have I got that right? I believe that's correct, Your Honor, under the application of, under 106, I think it's A4 of the REAL ID Act. It says specifically that review of final orders of deportation exclusion and removal doesn't mention any other additional issues that may arise in habeas corpus. And that would, that would be my first point. I would like to reserve eight minutes if I might. It's up to you. Secondly, I'd like to correct my 280, 28J letter on paragraph 2, I believe. The standard that would be applied now that the REAL ID Act controls would be the substantial evidence compelled to find a different finding standard as to the withholding and the Convention Against Torture claim. The understanding of the standards of review, as outlined here, do have one more procedural problem at this point that arises under RITA that I feel compelled to mention because of the intervening change of law since the time of the briefing. That issue is, if this becomes a petition for review as to the withholding and the Convention Against Torture claim, then we have a problem with an administrative record. The problem is, do we have a complete administrative record here? We obviously don't, because the decision, I believe it's Alvarez-Barajas, was decided, I think the mandate's finally issued on it, but it was just decided in August as to whether the pre-filed petitions that were still pending at the time of the enactment of the REAL ID Act should have a transcript of the hearing and I've got all the orders. What are we missing that we should have, because I've got the transcript of the hearing and I've got all the orders? Specifically, the country reports and then the secondary evidence. They are, right? Yes. They are not in the record. They were in the administrative record. Yes. They would have been in the administrative record. We know what they say because we've said what they said. They've been summarized in the record and in the briefs. However... And in our opinions, for that matter. That's true. That is correct. So what's the problem? So is there a problem? I just needed to raise that issue. I appreciate that, but I mean, is there anything else that we should have? I believe there's, as far as the actual specifics, when we get to social group analysis in this case, there is documentation in there on the identity of the village areas in Huehuetenango province, or department, rather, as to the cohesiveness. That would be one of several possible grounds on finding a social group. So that does present a problem, I believe. Secondly, although since the court has frequently dealt with the issue of the State Department report, that is not on the record either, and that would be if there were a reversal on the issue in the record and you find that there's compelling evidence of a contrary finding, then that would be the sole evidence that was being relied upon by the government in rebutting any claim of future persecution. There's also tangentially the whole issue of whether the habeas record comes in on the petition for review, I'm assuming it does at this point. The issue I'd like to address first of the substantive issues would be on the restriction of removal issue. The standard which we must meet now under the Real ID Act and the intervening change of the law would be whether this record compels a contrary finding to the finding of the immigration judge. We're reviewing the decision of the immigration judge because the Board of Immigration Appeals issued a purcurian decision in this particular case. Looking at the standards. Well, why was the I.J. compelled to find otherwise? That is, why was he compelled to conclude that the aunt's political opinion was imputed to your client as a child? On that particular issue, Your Honor, the problem is you've got a, it is an issue whether a child can actually have a political opinion imputed or otherwise. But I think in the circumstances of this particular situation, you have a village, two departments, two, excuse me, two hamlets that are essentially connected together. Rurally isolated. The record's very clear on that. You have this child in a household where the person is actually engaged in supporting guerrilla activities. If I understand it correctly, I mean, the unfortunate things that happened, happened in effect randomly, part by the guerrillas and part by the military. And seemed to be just a very regrettable part of the civil strife that was going on. Well, I think that the, if you look at the evidence, her testimony's been found to be credible. And there's no dispute as to that by the government on the appeal. The testimony states specifically, she was in the household, first of the military comes in, occupies, or imposes this division of labor, if you will, amongst the female population. It's a Conjabal-speaking area. It's in the highlands. It's in an area of counter-insurgency and insurgency, counter-operations. It's not like generalized country conditions as related under some of the case law. It's a specific area. When the military comes in, then specifically, they're looking at this area, I think from the record and from her testimony as well, as being an area of insurgency. And they're going to impose military control on it. And part of that control is breaking the female population down into this division of labor and essentially turning the female Mayan Indians locally in this particular hamlet into concubinage, to put it politely. That would be, I think, the circumstantial evidence, is the way the military's conducting themselves on page 82 by her own testimony. We have to understand she is illiterate, and we were using double translators in the hearing. But the F shot of it was, it was her understanding that there actually had been a directive against the village issued by the president at that point. That would be the basis of which I think the trial, the immigration judge overlooked completely in reaching his conclusions that these were just simply generalized conditions. In those circumstances, I would submit that there's an imputed political opinion to this particular woman, who at that time was roughly 11 years old. Mr. Bennett, we're a court of errors, we don't always make them, we sometimes try to correct them. You state, the statement of the issues presented on appeal in your case, you state five very broad issues, sweeping. Is there any one error that you would like to zero in on and say this is why you should reverse the decision? On specifically the issue that was just addressed, the judge's main finding, that is that issue here, is not finding, or finding on the basis of the record that he had no nexus, no connection between what is obviously a form of persecution under the case law, rape, and other forms of abuse. And the one of the five enumerated grounds on the withholding claim, and he's finding there's no connection between the two. Your argument is the record compels such a finding. Yes. And that's the standard that necessarily applies now after RITA. It's no longer the standard, Real ID Act, rather. It's no longer the standard that would have applied under a standard. Okay. May I ask you a question on a different point, which is your parental association rights claim? Obviously, the hearing or the proceeding that she wanted to get out of custody in order to attend is over and done with. So clearly, to that extent at least, the claim is moot. As to the two oldest children, the children are still pending proceeding, is there? Well, the three youngest are in long-term foster care. Is there any pending proceeding? My understanding, the children would still be wards of the court, and unfortunately I'm not stating it right. Is there any – she asked to be released from detention. She asked to be released from detention in order to attend a hearing. The hearing took place. She was represented by a lawyer, and she appeared and was heard telephonically. That proceeding is over, right? That is correct as to those two children. Yeah. Is there any pending proceeding as to any other kid? Well, it's my understanding under the juvenile law proceeding in the child. Yeah, no, I'm not talking about in the abstract. I mean, is there a pending proceeding that she wants to get sprung in order to attend? Is there a calendar date at this point? No. I'm sorry, Your Honor. It's ongoing, but there is no calendar date set at this point regarding the three youngest children. So then what's the point if there's no date set, no hearing set? I'm going to be subject to future review, as I understand it, from the public defender that was assigned to her. And so what are we supposed to do? The problem at this point is without an actual date, there's no date to make the transportation of – as far as that goes, yes, Your Honor. Is any part of the parental rights claim still alive? As to her rights to eventually intervene and assert her parental rights as to the three youngest children, yes. Yeah, but that can be – but that's premature, isn't it? Insofar as her current detention status, yes. Okay. So that entire claim really is on the one hand either moot or on the other hand not right. I would say it's – I'd submit it's not mooted, but as to the rightness issue without an imminent hearing date, the Court could be correct in that. But it's moot as to the hearing that's already gone by. That is correct. As to anything that may or may not happen in the future. That is correct, because she's now deprived entirely without any kind of review rights as to the loss of her parental rights. Okay. Suppose we hear from a counselor for the Attorney General or for Homeland Security or whomever you're a counselor for now. Good morning. I am Cynthia Parsons, and I represent the Attorney General and the Secretary of Homeland Security. Where do you usually work? The U.S. Attorney's Office in Phoenix, Arizona. That's what I thought. Everybody's being detailed from everywhere to handle these cases is what I thought. This is what I do. So may it please the Court. First, under the REAL-ID Act, the government contends that the conversion of this case to a petition for review, which under the REAL-ID Act and this Court's decision in Alvarez-Barajas and Fernandez-Ruiz, now restores judicial review over legal and constitutional claims, precludes review by this Court of the main issues that are presented in this case under withholding of removal and restriction of removal under the Convention Against Torture. None of the claims made under withholding or under the Convention Against Torture present legal or constitutional issues. If you look at the framing of the issues by the petitioner, he alleges that he met his burden of proof, that there was sufficient evidence. These are evidentiary and factual matters, not legal and constitutional issues over which this Court under a petition for review of a criminal alien can review. And consequently, we would suggest that the Court would need to dismiss or deny the petitioner for review with regard to the claims for withholding of removal and the Convention Against Torture. We would ask that the Court further. Would you state your reason again? Under the REAL-ID Act, the pending appeal of a final order of removal was converted to a petition for review, and in this Court's decision in Alvarez-Barajas or in Fernandez-Ruiz, excuse me, the Court stated that this restored judicial review over legal and constitutional issues over criminal aliens. However, these are not legal and constitutional issues. You mean it's not a legal issue whether there's substantial evidence to support the IJ's determination? A legal issue would be whether or not there was statutory eligibility, whether or not there was a violation of equal protection. This is purely evidentiary argument. I mean, I don't understand this to be a discretionary. I can understand the difference between a discretionary call, as to which we, in many cases, lack jurisdiction, but you're saying we lack jurisdiction to decide whether the IJ was compelled to make a contrary finding? For criminal aliens, yes. Because that's precluded by the REAL-ID Act or because that was precluded before the REAL-ID Act. It was precluded before the REAL-ID Act, and all that was restored by the REAL-ID Act was it eliminated the bar on jurisdiction over the PFR itself. It did not expand any jurisdictional review for any of the issues within the PFR itself. So this Court no longer is needs to reject out of hand a petition for review that is filed by a criminal alien. However, the fact that you have a petition for review before you does not mean that you necessarily have the jurisdiction to review each and every individual claim within that petition for review. And we would posit that, particularly following the – and we would ask you to follow the decisions of the Seventh Circuit in Hamid and Vasili, in which they determined – of course, Vasili was about discretionary issues. However, in Hamid, they were dealing with convention against torture and, in fact, held that the REAL-ID Act restored review over legal and constitutional issues, but that that did not include factual issues regarding whether someone was subjected to torture. Mr. Parsons, did you raise this in your red brief, that is, your issues presented in the summary in your argument? Unless I'm – maybe I'm – I may be totally missing something, but I didn't see that in the issues presented or in your argument. The brief – It's in your October 18 letter. It is in the 28J letter, yes, that was done recently. The briefing was completed before the REAL-ID Act and before the court – this Court announced Alvarez-Brahas, Fernandez-Ruiz, and before the Seventh Circuit ruled on Hamid and Vasili. Okay. And so that is why it was not in the original briefing. Therefore, we would contend that these legal – that these factual issues, these evidentiary issues in a petition for review by a criminal alien are not properly before the court and should be subject to dismissal. However, even if this Court were to determine that it did have jurisdiction over the petitioner's claims for withholding and conviction against torture, we submit that under the substantial evidence test that substantial evidence does support the decision of the immigration judge and also does – clearly does not compel a contrary result. First, under the clear probability standard, looking at the imputation of a political opinion, as Petitioner's Counsel conceded, it's difficult for a 10- or 11-year-old child to have a political opinion. And moreover, even though she is related to Aunt Petrona, who was a guerrilla supporter, it appeared that, as the Court has noted, that the atrocities that were done to this poor girl were basically done by both sides randomly. It was not – there was no testimony or evidence to the effect that the guerrillas took this young lady because they knew her aunt was a guerrilla supporter and that because the family was a guerrilla supporter, we can conscript you. There was no evidence of that. There was no testimony or evidence that the soldiers took her because they knew she was the niece of Aunt Petrona. Rather, the only evidence and testimony that's in the record is that she was taken because she was a young girl, she was available, and probably couldn't challenge either side. That does not give us the required nexus to an imputed political opinion or even her membership in a particular social group. There was no evidence that they were taking her because she was a Cajabal Indian. The only evidence is that she was a 10-, 11-year-old girl and she was available. And as reprehensible as that treatment is, and it is reprehensible, to have a claim, one must connect that reprehensible treatment to one of the categories. Our contention is that the evidence simply wasn't there to connect it sufficiently to one of the protected categories. And certainly the evidence isn't there to compel different results, saying that the evidence was so overwhelming that the decision of the immigration judge on those issues was erroneous and should be reversed. So it appears to me that she did belong to an identifiable social group. Is that right? She was a Cajabal Indian. That is correct. And she was subject to conduct which clearly could qualify as persecution. That is correct. So what's lacking is the connection between the two. That is correct. A sufficient connection. There is evidence that she had an Aunt Petrona who supported the guerillas. What we don't have is any evidence or testimony. She didn't testify that any of the soldiers said, hey, we know your aunt, and this is what we do to the families of guerillas. She was with them for some considerable length of time, and yet she didn't testify that they ever even mentioned her aunt. Moreover, when the guerillas took her again, for the length of time she was with them, you would have expected some ---- Well, did the guerillas belong to the same identifiable social group that she belonged to? I don't know that the record states whether they did or not. I don't believe it does. I don't believe ---- some guerillas certainly were Cajabal Indians. Petrona herself supported the guerillas. She was a Cajabal Indian. So certainly there is evidence that some of the guerillas may have been of the same social group as the petitioner. How about the government? The government, the soldiers, as I stated, they took her and basically abused her in the same manner as did the guerillas, and yet there was no evidence, no testimony from her that she was taken because she was related to her aunt, or she was taken particularly because she was a Cajabal Indian, as opposed to being a 10- or 11- or 12-year-old girl who couldn't fight back and happened to be available. So the evidence simply isn't there to compel a contrary result. If there had been testimony regarding letters sent to the house, threats made to the house regarding, you know, Aunt Petrona, we know you support the guerillas and better watch your nieces, we're going to get them. If there had been discussions from the soldiers, even offhand comments from the soldiers, that we know your aunt supports the guerillas and this is what we do to families of guerilla supporters, there was none of that. What there was evidence of is that both the guerillas and the soldiers indiscriminately used young girls for sex and they used the women basically as a workforce. Even if, however, this Court were to find that there was a sufficient nexus to show the past persecution, the government contends there clearly is not enough evidence in the record to compel a contrary result regarding the likelihood of a threat of future persecution. The only real evidence that Petitioner gave to regarding why she feels she would be threatened currently boiled down to basically two things. First, a couple that she knew had recently returned from the United States to Guatemala, and when they were there, they were approached by, I believe it was the guerillas, who asked them if they had just come from the United States, where did you just come from, and do you have American dollars? We want the American dollars. There was no evidence that they were coming after these people because they were Canabal Indians. In fact, there was not even a direct testimony that these were Canabal Indians. There was no evidence that they approached these people because of any political opinion. Rather, the evidence was they thought they'd just come back from the United States and might have valuable American dollars. People returning from the United States who might have American dollars are not a particular social group. That is not a political opinion yet. Yet. That's true. Therefore, if that's what they felt threatened by, once again, it might be scary. It could even constitute some harm to them, but it's not connected to one of the five categories, and without that connection, that's not evidence to compel a contrary result. Second, she also testified that she was afraid that a gorilla that she had been associated with and who also had known the father of one of her children, a man named Zippin, that she was afraid of him. But yet there's nothing in the record to really tell us why she's afraid of him. There's no evidence that he has sought her out. There's no evidence that he has contacted her aunt. There's no evidence he's tried to contact her. So it's unclear why she is afraid 20 years later that this man would harm her. Moreover, she herself returned to Guatemala in 1985. She was there for two months. She took a very young child with her. She lived very close to her aunt, and yet the only experience she had while she was there is that she was approached by some men, some gorillas, who wanted to know who she was and where did you come from. And she lied and said, oh, I've been here all the time. And they said, no, we don't know you. We don't know you. And they said, you know what we do? You know, we could throw you in the river. Well, that's reprehensible conduct. But the fact was they know her. If they don't know her, how can they impute a political opinion to her? If they don't know her, how can they think that she's a member of a particular social group if they don't even know who she is? The fact is they didn't want strangers around, and that's exactly what she testified to. We don't like strangers. Strangers and people who haven't been around the village for a while don't constitute a particular social group. That is not a political opinion. Once again, it may have been frightening to have experienced, but we are lacking the nexus to one of the five enumerated categories. So once again, there is insufficient evidence to compel a contrary result. And we would submit that the withholding claim, even assuming this Court has jurisdiction to review it, should fail. Ms. Parsons, does the government agree that the parental right claim with respect to the proceeding that's over is moot, and anything else is not right? Oh, absolutely, Your Honor. Okay. Is there anything else you need, any further light you need to shed on that issue? No, Your Honor. Okay. Just very quickly regarding the claim for convention against torture, similarly to the claim for withholding of removal, there's even less evidence in the record to compel a contrary finding under the convention against torture.  So you're having the gorillas ask her where she came from, asking her for money, asking her if you know who you are. There's no evidence, one, that that constitutes torture or a likelihood of torture, and there's no evidence that the government is not trying to control all of this. As the country reports make clear, the war has been over for some time. There have been tremendous gains in stability in that country. And we're very familiar with these change country reports. Yes. And so with the war over and with the evidence being that the people who are being subjected to any harmful treatment are really high government officials, she clearly is not. That, coupled with all of the lack of testimony, does not compel a contrary result, and therefore, we would also suggest to the Court that the convention against torture claim also should fail. Okay. Thank you very much. Mr. Bennett. Just briefly, Your Honor. As to the issue of whether the Real ID Act eliminates the power of the Court to review a withholding or convention against torture claim, I'd submit that that doesn't seem to be the nature of the statute. It would not suggest itself to that. It does restore the right to review legal and constitutional issues if you are convicted of what was formerly a disqualifying aggravated felony that would preclude jurisdiction. There's no question this is an aggravated felony as a matter of law. It's possession of cocaine base for sale under the California Constitution. However, be that as it may, if it's restoring it, I would necessarily understand it to be restoring the entire scope of review that previously existed. There's no the second problem with government's argument is that if the Court follows that reasoning, then the Real ID Act creates necessarily an entire class of aliens that would be precluded from any kind of judicial review, habeas petition for review as to rulings made in their withholding or convention against torture claims. In other words, if you're an aggravated felony under the government's analysis, you no longer have any judicial review. And I don't think that's going to pass constitutional muster. It carves out a class of aliens that would be saying substantially you get administrative review and that's it. Secondly, turning to the evidentiary issues, if you don't concede that a 10-year-old cannot have an imputed political opinion, I believe she can, especially under the facts of this case, I think the circumstantial evidence and the direct testimony in this case clearly shows the military in 1981 was targeting this village for, under a directive apparently by my client's testimony, unrefuted testimony, and secondly, systematically moving in and occupying this village in 1981. Obviously, it's being targeted. Let's assume for a second that you might be right, that she was the victim of past persecution and is therefore entitled to a presumption of future persecution. The other side says, yes, but under these facts 20 years later with all of these changes, there's no way that you can sustain that burden. What's your answer to that? If the full corpus of law regarding withholding a removal comes back in after the enactment of real ID on this petition for review, then the burden is on the government, not on the Respondent to rebut it. There's a presumption of past persecution. What's your answer to the government's statement that there's nothing here? The government's only evidence is the State Department report. And I think under the precedence in this circuit, that is not enough. It has to be a particularized finding to rebut the presumption. Now, they could come forward with evidence to rebut it. They didn't do that. And that's the problem in this case. If there's past persecution that's found in this case, then necessarily the presumption has not been rebutted based on the status of this case as it's before this Court. The ---- I think that covers the ---- Oh, one more point. Just as a factual matter, the military does enter the village in 1981. Now, they burn it down later. So it's quite obvious that, I mean, they're not just interested in coming through here and picking up a few concubines and getting a few tortillas made for them while they're traveling through the area. I mean, it's subsequently burned in 1985, according to my client's testimony. So it's quite obviously a target area. And it's a target community, a community based on a specific ethnic cultural identity. And if there are no other questions, then I submit it. Thank you, counsel. The matter just argued would be submitted.
judges: Trott, Rymer, Plager